IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────

ISSAC McDONALD,

                    Plaintiff,           Civil Action No.
   v.                           9:06-CV-0410 (LEK/DEP)

ISRAEL RIVERA, *et al.,*

                   Defendants.

─────────────────────────────────────

APPEARANCES:              OF COUNSEL:

FOR PLAINTIFF:

ISSAC McDONALD*, Pro Se*

FOR DEFENDANTS:

HON. ANDREW M. CUOMO       JAIME IRENE ROTH, ESQ.
Attorney General of            Assistant Attorney General
the State of New York
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

    Plaintiff Issac McDonald, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis,* has commenced this action

pursuant to 42 U.S.C. § 1983, alleging deprivation of his civil rights.  After

two false starts plaintiff has now filed an amended complaint meeting the court's pleading requirements, alleging that he was harassed by corrections workers at the facility in which he was housed at the relevant times, ostensibly in retaliation for his having registered complaints regarding his treatment.  As relief, plaintiff's seeks both a declaration that defendants violated his constitutional rights and recovery of compensatory and punitive damages of at least $300,000.

In response to plaintiff's complaint, defendants have moved seeking its dismissal on a variety of bases, arguing that 1) it fails to assert any basis for finding personal liability against some of the defendants; 2) plaintiff's claim of equal protection, as pleaded, lacks merit; 3) plaintiff's retaliation cause of action is improperly stated in only conclusory terms, and does not meet any of the three requirements for establishing such a claim; 4) plaintiff's claim of cruel and unusual punishment is lacking in merit; and 5) plaintiff has failed to state a cognizable claim under the Civil Rights of Institutionalized Persons Act, which does not confer a private right of action upon prison inmates.[1]  For the reasons set forth below, I

---

[1]     In their motion, defendants also seek dismissal of any claim by the plaintiff for injunctive relief, based upon his transfer out of the facility at which the relevant events occurred.  *See* Defendants' Memorandum (Dkt. No. 25-2) at 9.  Because careful review of plaintiff's amended complaint does not disclose any request by him for such

recommend that defendants' motion be granted, in part, but otherwise denied.

I.      BACKGROUND[2]

At the times relevant to his claims, plaintiff was a prison inmate entrusted to the custody of the New York State Department of Correctional Services (the "DOCS"), and designated to the Coxsackie Correctional Facility ("Coxsackie"), located in Coxsackie, New York.  *See generally* Amended Complaint (Dkt. No. 16).

On August 16, 2005, as he was being transferred into the B-2 company at Coxsackie, plaintiff was approached by defendant M. Wildermuth, a corrections officer, and told that if he made any noise he would be issued a misbehavior report, and that the corrections officer, who did not like McDonald, would do whatever was necessary to cause him to be detained in keeplock confinement or transferred into the facility's special housing unit ("SHU").  *Id.* ¶ 1.  According to the plaintiff, defendant

_____

equitable relief, I have not addressed this portion of the defendants' motion.

[2]      In light of the procedural posture of this case, the following recitation is drawn from plaintiff's complaint, the allegations of which have been accepted as true solely for purposes of defendants' motion.  *See Erickson v. Pardus*, __U.S. __, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1965 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964).

Wildermuth made good on that promise on August 24, 2005, by issuing him a misbehavior report charging two disciplinary infractions, including refusal to obey an order (Rule 106.10) and failure to follow staff guidelines (Rule 121.12)  *Id.* ¶ 2.  On that same date – although it is unclear whether this was as a direct result of the issuance of a misbehavior report – defendant Wildermuth also denied plaintiff access to both a designated recreation period and his evening meal.  *Id.* ¶ 3.  According to the plaintiff, these actions were taken in retaliation for his having spoken to a corrections sergeant on the prior day, apparently concerning defendant Wildermuth's threats.  *Id.*

Plaintiff filed a formal grievance on August 24, 2005 regarding derogatory remarks made by defendant Wildermuth.  Amended Complaint (Dkt. No. 16) ¶ 4.  On the following day, Corrections Officer Wildermuth responded by threatening to plant a weapon in plaintiff's cell for the purpose of orchestrating a lengthy period of disciplinary confinement for McDonald.  *Id.* ¶ 5.  That threat led to the plaintiff's filing of a second grievance to address defendant Wildermuth's conduct.  *Id.*

On August 30, 2005, plaintiff was issued another misbehavior report, on this occasion by Corrections Officer J. Frazier, also a named defendant

4

in the action, accusing him of intentional sexual exposure (Rule 101.20) and failure to obey a direct order (Rule 106.10).   As a result of that second misbehavior report, also attributed by the plaintiff to retaliatory animus based upon his having filed grievances against defendant Wildermuth, and alleged by him to contain baseless accusations, plaintiff was placed in keeplock confinement for thirty days.  Amended Complaint (Dkt. No. 16) ¶ 6.

Plaintiff claims that following these events he was subjected to continuing harassment while at Coxsackie, and specifically alleges that on October 22, 2005 he was harassed and threatened by Corrections Officer J. Frazier.  Amended Complaint (Dkt. No. 16) ¶10.  Over time, plaintiff lodged complaints with various prison officials regarding the conduct of corrections officers at Coxsackie, including with facility Superintendent Israel Rivera, an un-named Deputy Superintendent of Security at the prison, and Corrections Captain Gary Costonas. *Id.* ¶¶ 7-13.  Plaintiff maintains that despite those complaints, most of which went unanswered, the harassment continued and that after his release from keeplock confinement he was returned to the B-2 housing unit at Coxsackie, despite his request for a transfer into another housing unit within the facility. *Id.*

5

II.    <u>PROCEDURAL HISTORY</u>

Plaintiff commenced this action on March 1, 2006.  Dkt. No. 1.  After

having been alerted by the court to various procedural and substantive

deficiencies, *see* Dkt. Nos. 4, 8, 14, plaintiff submitted an amended

complaint received by the court on or about December 20, 2006, and the

filing of which was thereafter approved by order issued by Senior District

Judge Lawrence E. Kahn on January 23, 2007.  Dkt. Nos. 16, 17.  As

defendants, plaintiff's complaint names Israel Rivera, the Superintendent

at Coxsackie; Corrections Captain Gary Costonas; and Corrections

Officers M. Wildermuth and J. Frazier.[3]  Dkt. No. 16.  Plaintiff's complaint,

as amended, asserts four distinct causes of action, alleging 1) unlawful

retaliation, based upon his filing of grievances; 2) denial of equal

protection; 3) cruel and unusual punishment; and 4) violation of the Civil

Rights of Institutionalized Persons Act, 42 U.S.C. §§ 1997-1997j, and

seeks both declaratory relief and an award of damages.

On April 9, 2007, in response to the filing and service of plaintiff's

amended complaint, defendants moved seeking dismissal of plaintiff's

---

[3]     While plaintiff's complaint also named H.D. Graham, identified as the
Superintendent of the Auburn Correctional Facility, as a defendant he has since been
dismissed from the action, based upon the plaintiff's failure to reference him in the
body of that pleading.  *See* Dkt. No. 17 at 2.

claims on a variety of bases.  Dkt. No. 25.  That motion, which plaintiff has

not opposed despite passage of the response deadline, is now ripe for

determination and has been referred to me for the issuance of a report

and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(c).[4]  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

   A.    Rule 12(b)(6) Standard

   A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure, calls upon a court to gauge the

facial sufficiency of that pleading, utilizing as a backdrop a pleading

standard which is particularly unexacting in its requirements.  Rule 8 of the

Federal Rules of Civil Procedure requires only that a complaint contain "a

---

[4]    Plaintiff's failure to respond in opposition to defendants' motion does not serve as an impediment to a determination of that motion.  *See*, *e.g.*, *White v. Mitchell*, No. 99-CV-8519, 2001 WL 64756, at *1 (E.D.N.Y. Jan. 18, 2001).  Motions to dismiss test only the legal sufficiency of the complaint; accordingly, while a party should be afforded a reasonable opportunity to respond to such a motion a court can judge the sufficiency of a complaint as a matter of law based on its own reading of the complaint and knowledge of the case law.  *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000).  It should be noted, moreover, under this court's local rules the plaintiff's failure to respond to defendants' properly filed motion could be regarded as his consent to granting of that motion, provided that the defendants have met their burden of making a facial showing of entitlement to the relief requested.  N.D.N.Y.L.R. 7.1(b)(3); *see also* *McCall*, 232 F.3d at 322-23 (holding that plaintiff's failure to respond to motion to dismiss in and of itself could not constitute basis for dismissal if plaintiff's complaint stated a claim for relief); *White*, 2001 WL 64756, at n.2 (citing *McCall*).

short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Absent applicability of a heightened pleading requirement such as that imposed under Rule 9, a plaintiff is not required to plead specific factual allegations to support the claim; rather, "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, __ U.S. __, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964 (2007) (other quotations omitted)); *cf. Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (acknowledging that a plaintiff may properly be required to illuminate a claim with some factual allegations in those contexts where amplification is necessary to establish that the claim is "plausible").  Once the claim has been stated adequately, a plaintiff may present any set of facts consistent with the allegations contained in the complaint to support his or her claim.  *Twombly*, 127 S. Ct. at 1969 (observing that the Court's prior decision in *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99 (1957), "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept

the material facts alleged in the complaint as true, and draw all inferences in favor of the non-moving party. *Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1722, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir.), *cert. denied*, 540 U.S. 823, 124 S. Ct. 153 (2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) is substantial; the question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, "'but whether the claimant is entitled to offer evidence to support the claims.'" *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 435, 441 (S.D.N.Y. 2001) (quoting *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (other quotations omitted)).  Accordingly, a complaint should be dismissed on a motion brought pursuant to Rule 12(b)(6) only where the plaintiff has failed to provide some basis for the allegations that support the elements of his or her claim.  *See Twombly*, 127 S. Ct. at 1969, 1974; *see also Patane v. Clark*, __ F.3d __, 2007 WL 4179838, at *3 (2d Cir. Nov. 28, 2007) ("In order to withstand a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face.'") (quoting *Twombly)*.

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action.  *Erickson*, 127 S. Ct. at 2200 ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976) (internal quotations omitted)); *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir. 2003) (citation omitted); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.).  In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated.  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

    B.   <u>Personal Involvement</u>

Plaintiff's complaint names Superintendent Rivera and Corrections Captain Costonas as two of the defendants being sued.  It does not, however, allege direct involvement on the part of either of those

10

defendants in the constitutional deprivations alleged.  Instead, plaintiff's claims against those two individuals arise from his complaints to them regarding the ongoing harassment which he experienced while at Coxsackie and the fact that for the most part his requests for their intervention went unanswered.  *See, e.g.,* Amended Complaint (Dkt. No. 16) ¶¶ 7, 9, 10, 11, 12 and 13.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

Both of the defendants now seeking dismissal on this basis appear to have held supervisory positions at Coxsackie during the relevant times. A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor – there is no *respondeat superior* liability

11

under section 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501.  A supervisory official can, however, be liable in one of several ways: 1) the supervisor may have directly participated in the challenged conduct; 2) the supervisor, after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) the supervisor may have created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) the supervisor may have been grossly negligent in managing the subordinates who caused the unlawful event; or 5) the supervisor may have failed to act on information indicating that unconstitutional acts were occurring.  *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007); *see also Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

### 1.    Superintendent Rivera

Plaintiff's sole complaint against Superintendent Rivera is that despite writing to him in his capacity as facility superintendent to complain of the treatment received from corrections workers at Coxsackie, those letters went unanswered.  This allegation, standing alone, is insufficient to establish the requisite degree of personal involvement on the part of

defendant Rivera in the constitutional violations alleged. *Greenwaldt v. Coughlin*, No. 93 Civ. 6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations.") (citing, *inter alia, Garrido v. Coughlin*, 716 F.Supp. 98, 100 (S.D.N.Y.1989) (dismissing claim against superintendent of prison where only allegation was that he ignored inmate's request for an investigation)). Accordingly, I recommend dismissal of plaintiff's claims as against defendant Superintendent Rivera.

### 2.   Corrections Captain Costonas

Like Superintendent Rivera, Corrections Captain Gary Costonas also is alleged to have received multiple written complaints from the plaintiff concerning his circumstances. Amended Complaint (Dkt. No. 16) ¶¶ 9, 11-13. While, as was the case with respect to Superintendent Rivera, most of those letters went unanswered, a written communication by the plaintiff to Captain Costonas on December 23, 2005 requesting a housing transfer within Coxsackie generated a response in which Captain Costonas wrote "[y]ou do not tell me where you should lock in Coxsackie

C.F., accordingly, my office will not [sic] further action." *Id.* ¶ 12.  In view of plaintiff's allegation that the harassment experienced by him in retaliation for the filing of grievances was ongoing and involved two corrections officers apparently assigned to the B-2 housing unit, the refusal by defendant Costonas of plaintiff's request for a transfer out of that unit could suffice to establish that individual's personal liabilty.  *See Ramos v. Artuz*, No. 00 CIV 0149, 2001 WL 840131, at *8-10 (S.D.N.Y. July 25, 2001) (finding personal involvement by prison official whose involvement extended "beyond the mere receipt of letters" in that he "sent plaintiff numerous letters containing some explanation or justification" regarding the plaintiff's medical complaints).  Accordingly, I recommend against dismissal of plaintiff's claims against defendant Costonas at this early procedural juncture.

    C.    <u>Equal Protection</u>

    Plaintiff's second cause of action alleges, in summary fashion, a violation of the Equal Protection Clause of the Fourteenth Amendment.  In their motion, defendants seek dismissal of that claim as legally deficient.

    The Equal Protection Clause requires that state actors afford the same treatment to persons who are, for material purposes, similarly

situated.  *See City of Cleburne, Texas v. Cleburne Living Ctr.,* 473 U.S.

432, 439, 105 S. Ct. 3249, 3254 (1985).  To prove an Equal Protection

violation, a plaintiff must demonstrate that he or she was treated differently

than others similarly situated as a result of intentional or purposeful

discrimination directed at an identifiable or suspect class.  *See Giano v.*

*Senkowski*, 54 F.3d 1050, 1057 (2d Cir.1995) (citing, *inter alia*, *McCleskey*

*v. Kemp*, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767 (1987)).  The plaintiff

must also show that the disparity in treatment "cannot survive the

appropriate level of scrutiny which, in the prison setting, means that he [or

she] must demonstrate that his [or her] treatment was not reasonably

related to [any] legitimate penological interests."  *Phillips v. Girdich*, 408

F.3d 124, 129 (2d Cir. 2005) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225,

121 S.Ct. 1475 (2001) (internal quotation marks omitted)).

    Plaintiff's complaint in this instance alleges a series of deprivations

which he attributes to retaliatory animus stemming from his having lodged

complaints against various corrections workers including, principally,

defendant Wildermuth.  In his pleading, plaintiff does not identify himself

as a member of any particular class.[5]

---

[5]    This deficiency is not necessarily fatal, since an equal protection claim may be

While far from artfully drafted, plaintiff's complaint does make at least oblique reference to his race, attributing to defendant Wildermuth a statement, made in connection with his refusal to allow McDonald to participate in recreation on August 24, 2005, to the effect that "ignorant Negro's [sic] like [the plaintiff] should not be allowed outside anyway." *See* Amended Complaint (Dkt. No. 16) ¶ 3. As was previously noted, the court's function at this procedural juncture is to determine, based upon the four corners of his complaint, whether McDonald has stated a plausible claim of Equal Protection denial sufficient to merit the opportunity to offer evidence in support of the claim. *Twombly*, 127 S. Ct. at 1969, 1974; *Patane*, 2007 WL 4179838, at *3. While I have serious reservations as to whether plaintiff's complaint alleges conduct, including the loss of a single meal and a day of recreation, which arises to a level of constitutional significance, I am unable to conclude at this early procedural stage that plaintiff has not pleaded a colorable Equal Protection claim, particularly in view of statements allegedly attributed to corrections officer Wildermuth

---

established by a person claiming to constitute a class of one who has been subject to invidious discrimination. *See Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005) ("While the Equal Protection Clause is most commonly used to bring claims alleging discrimination based on membership in a protected class . . . [a plaintiff] can still prevail in what is known as a 'class of one' equal protection claim.") (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074 (2000) (per curiam)).

which, if true, could be viewed as reflecting race-based animus.  *See Figueroa v. Kapelman*, 526 F. Supp. 681, 685 (S.D.N.Y. 1981) (indicating that plaintiff's alleged equal protection violations stemming from, *inter alia*, his receipt of cold meals failed to state a cause of action under the Equal Protection Clause); *but see Maldonado v. Pharo*, 940 F. Supp. 51, 56 (S.D.N.Y. 1996) (noting that the use of racial slurs may provide "ample evidence" to survive a motion for summary judgment on an equal protection claim) (citing *Lorenzana v. Mette*, No. 94 C 6861, 1995 WL 461860, at *5 (N.D. Ill. Aug. 2, 1995) ("'[W]hile derogatory references to racial or ethnic backgrounds by themselves obviously do not rise to the level of a deprivation of constitutional rights . . . they do support a finding of racial animus . . . .'") (quoting *Bell v. City of Milwaukee*, 746 F.2d 1205, 1259 (7th Cir. 1984), *overruled on other grounds*, *Russ v. Watts*, 414 F.2d 783 (7th Cir. 2005))).  I therefore recommend against dismissal of plaintiff's Equal Protection claim.

     D.    <u>Eighth Amendment</u>

In their motion, defendants next seek dismissal of plaintiff's third cause of action, which alleges that he was subjected to cruel and unusual punishment, in violation of the Eighth Amendment.  In support of that

request, defendants argue that the deprivations alleged were *de minimis,* and do not rise to a level sufficient to support an Eighth Amendment violation.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S.Ct. 285, 290, 291 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citing, *inter alia, Estelle*). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement – the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with

18

"deliberate indifference."  *See Leach v. Dufrain,* 103 F. Supp. 2d 542, 546

(N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S.

Ct. 2321 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at

*2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.); *see also, generally,*

*Wilson*, 501 U.S. 294, 111 S. Ct. 2321.  Deliberate indifference exists if an

official "knows of and disregards an excessive risk to inmate health or

safety; the official must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must

also draw the inference."  *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1978;

*Leach*, 103 F. Supp. 2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809,

at *2 (same).

Plaintiff's cruel and unusual punishment claim is comprised of four

distinct elements, alleging 1) a pattern of verbal harassment, including a

racial slur, attributed primarily to defendants Wildermuth and Frazier; 2)

the denial of one meal; 3) the deprivation of a single period of recreation;

and 4) thirty days of keeplock confinement under otherwise normal

conditions.  It is well-established that the verbal harassment of a prison

inmate by prison officials, without more, does not give rise to a cognizable

Eighth Amendment claim.  *See Moncrieffe v. Witbeck*, No. 97-CV-253,

19

2000 WL 949457, at *3 (N.D.N.Y. June 29, 2000) (Mordue, J.) (finding that allegations that corrections officer laughed at and insulted inmate not actionable under section 1983) (citation omitted); *Carpio v. Walker*, No. Civ.A.95CV1502, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15, 1997) (Pooler, J. & DiBianco, M.J. ) ("Verbal harassment alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not rise to the level of an Eighth Amendment violation").  Turning to the plaintiff's  assertion that he was denied one meal and participation in a single recreation period, these alleged actions, while not necessarily to be condoned, particularly if motivated based upon unlawful considerations, nonetheless are not sufficiently grievous to support an Eighth Amendment cruel and unusual punishment claim.  Finally, the allegation that plaintiff was placed in keeplock confinement under otherwise normal conditions for thirty days similarly does not establish a claim of cruel and unusual punishment.[6]

*See*, *e.g.*, *Jackson v. Johnson*, 15 F. Supp. 2d 341, 363 (S.D.N.Y. 1998)

---

[6]      Indeed, keeplock confinement of such a relatively modest duration is generally not regarded as a liberty deprivation sufficient even to trigger the procedural due process requirements of the Fourteenth Amendment.  *See Moore v. Senkowski*, No. 93-CV-1052, 1996 WL 191988, at *1-3 (N.D.N.Y. Apr. 15, 1996) (Pooler, J.) (citing *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293 (1995)).

("The mere placement in keeplock for 99 days is not sufficiently egregious to constitute cruel and unusual punishment under the Eighth Amendment.").

Having carefully reviewed plaintiff's most recent complaint, filed after having been placed on notice of earlier deficiencies, I conclude that it fails to allege deprivations of a constitutional magnitude, and therefore recommend dismissal of plaintiff's Eighth Amendment cruel and unusual punishment claim.

     E.    <u>Retaliation</u>

At the heart of plaintiff's complaint is his claim of unlawful retaliation. Defendants contend that plaintiff's retaliation claim is similarly deficient.

In order to state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that 1) the conduct at issue was protected; 2) the defendants took adverse action against the plaintiff; and 3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97

S. Ct. 568, 576 (1977); *Dillon v. Morano*, 497 F.3d 247, 251, (2d Cir. 2007); *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds*, *Phelps v. Kapnolas*, 308 F.3d 180 (2d Cir. 2002).  If the plaintiff carries this burden, the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff "even in the absence of the protected conduct."  *Mount Healthy*, 429 U.S. at 287, 97 S. Ct. at 576.  If taken for both proper and improper reasons, then, state action may be upheld if the action would have been taken based on the proper reasons alone.  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citations omitted).

As one might gather, evaluation of claims of retaliation is a particularly fact-laden exercise, requiring careful analysis of the plaintiff's claims of protected conduct, the adverse action allegedly taken by the defendants, and the nexus between the two.  When engaged in that exercise, a court must view claims of retaliation with "skepticism and particular care" in light of the ease with which claims of retaliation are incanted.  *Dawes*, 239 F.3d at 491 (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir. 1983)).

Standing alone, the mere allegation that a false misbehavior report

has been filed against an inmate does not implicate conduct of constitutional conduct. *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982, 108 S. Ct. 1273 (1988)).  Plaintiff's further assertion in this case, to the effect that the false misbehavior reports issued to him on August 24 and 30, 2005 were prompted by retaliatory animus, based upon his having engaged in protected activity, however, suffices to state a cognizable claim for retaliation. *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988).

Based upon my review of plaintiff's complaint for legal sufficiency, measured against this backdrop, I conclude that he has asserted a plausible claim of retaliation based upon the issuance of allegedly false misbehavior reports in retaliation for his filing of grievances, and thus recommend that he be afforded the opportunity to develop and offer evidence in support of that claim.

F.    Civil Rights of Institutionalized Persons Act

Plaintiff's final claim purports to arise under the Civil Rights of Institutionalized Persons Act of 1980, Pub. L. 96-247, 94 Stat. 349 (1980), codified at 42 U.S.C. § 1997 *et seq.* ("CRIPA").  The CRIPA was enacted

23

in 1980 to address

> egregious or flagrant conditions which deprive. . .
> [persons confined in qualifying institutions] of any
> rights, privileges, immunities secured or protected
> by the Constitution or laws of the United States
> causing such persons to suffer grievous harm, and
> [which] is pursuant to a pattern or practice of
> resistence to the full enjoyment of such rights,
> privileges or immunities . . .

42 U.S.C. § 1997a(a).  In instances where the stringent requirements of

the Act are satisfied, the CRIPA confers upon the Justice Department,

which prior to its enactment lacked the power to sue on behalf of

institutionalized persons, *see e.g., United States v. Mattson,* 600 F.2d

1295, 1297 (9th Cir. 1979), the authority to commence suit in order to

seek, as relief, that which has been described in the statute as "the

minimum corrective measures necessary to insure [inmates] full

enjoyment of such rights, privileges, or immunities . . ." as are guaranteed

under the Constitution and federal law.  42 U.S.C. § 1997a(a); *see*

*Messier v. Southbury Training School,* 916 F. Supp. 133, 137 (D. Conn.

1996).  The determination of whether the specific prerequisites to suit

under the CRIPA have been met rests solely within the province of the

Attorney General.  *Messier,* 916 F. Supp. at 137 n.2.

   The Act defines qualifying institutions falling within its purview to

24

include "a jail, prison, or other correctional facility",  42 U.S.C. §

1997(1)(B)(ii).  The Act's purview thus seemingly extends to the DOCS

facility at Coxsackie.  Defendant maintains that despite this fact, no private

right of action exists under the CRIPA, and thus plaintiff's claim under that

provision is subject to dismissal.

The determination of whether a private right of action should be

inferred from a federal law entails examination of the legislative intent

underlying the particular enactment.  *Price v. Brittain,* 874 F.2d 252, 262

(5th Cir. 1980); *see also Universities Research Ass'n, Inc. v. Coutu,* 450

U.S. 754, 770, 101 S. Ct. 1451, 1561 (1981).  In its decision in *Cort v. Ash,*

the United States Supreme Court set out guideposts to assist courts in

determining whether a private right of action should be inferred from the

legislative history supporting a particular statute.  422 U.S. 66, 78, 95 S.

Ct. 2080, 2087-88 (1975).  Under *Cort,* the four factors are identified as

relevant to the inquiry, including whether 1) the plaintiff is a member of a

class for whose special benefit the statute was enacted; 2) the legislative

intent indicates, either explicitly or implicitly, either an intention to create a

private remedy or, conversely, to deny one; 3) whether the finding of a

private right of action would be consistent with the underlying purposes of

the legislative fiscal scheme; and 4) whether the cause of action is one

historically relegated to state law, addressing an area principally of

concern to the state, such that it would be an appropriate to infer a federal

private right of action.  *Id.*  In subsequent cases, the Supreme Court has

qualified the *Cort* test by indicating that these four factors do not

necessarily carry equal weight, and the "dispositive" question is whether

Congress intended to create a private right of action.  *Transamerica*

*Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 24, 100 S. Ct. 242, 249

(1979); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456

U.S. 353, 377-78, 102 S. Ct. 1825, 1839 (1982) ("Our cases subsequent

to *Cort v. Ash* have plainly stated that our focus must be on the intent of

Congress. . . . The key to the inquiry is the intent of the Legislature."

(internal quotation marks and footnote omitted)); *Touche Ross & Co. v.*

*Redington*, 442 U.S. 569, 568, 99 S. Ct. 2479, 2485 (1979).  "'Indeed, the

first three factors discussed in *Cort* – the language and focus of the

statute, its legislative history, and its purpose – are ones traditionally relied

upon in determining legislative intent.'"  *Transamerica*, 444 U.S. at 24, 100

S. Ct. at 249 (quoting *Touche Ross & Co.*, 442 U.S. at 575-76, 99 S. Ct. at

2489) (internal citation omitted).

Applying the relevant factors, I find no basis to conclude that a private right of action was intended by Congress when enacting the CRIPA.  *Cf. Price,* 874 F.2d at 262-64 (finding no private right of action under 42 U.S.C. § 1997d, an anti-retaliation provision included as part of the Act); *Bieros v. Nicola*, 860 F. Supp. 226, 235 (E.D. Pa. 1994) (same). By its express terms, the CRIPA authorizes the United States Attorney General, who must personally sign any complaint filed under the Act, to initiate action to seek appropriate redress for violations of the Act.  42 U.S.C. § 1997a(a).  While under the Act intervention by the Attorney General in an action commenced "seeking relief from egregious or flagrant conditions which deprive persons residing in institutions of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States . . . ." is permitted, *see* 42 U.S.C. § 1997c, neither this language nor any other portion of the statute evinces an intent by Congress to provide a private right of action to sue independently under the Act asserting constitutional deprivations which are fully redressable under 42 U.S.C. § 1983.  Accordingly, applying the factors identified in *Cort* and its progeny, and particularly in view of the plain language of the statute itself, I recommend a finding that the CRIPA does not provide a

private right of action for a prison inmate and, correspondingly, dismissal of plaintiff's fourth cause of action. *Johnson v. Fairman*, No. 95 C 5416, 1997 WL 137179, at *5 (N.D. Ill. Mar. 24, 1997); *see also Cooper v. Sumner*, 672 F. Supp. 1361, 1367 (D. Nev. 1987) (holding that 42 U.S.C. §1997c, which authorizes the Attorney General to intervene in prisoner civil suits, does not confer a private right of action upon inmates).

IV.   SUMMARY AND RECOMMENDATION

Despite having been afforded multiple opportunities to detail his claims with sufficient clarity in order to facially demonstrate the existence of one or more plausible constitutional claims, plaintiff has filed with the court a complaint which is exceedingly concise and bereft of specifics, and which reflects his inability to articulate facts which would sustain an Eighth Amendment cruel and unusual punishment claim. Plaintiff's complaint also asserts a cause of action under the CRIPA, an Act which affords no private right of action. Accordingly, I recommend that plaintiff's third and fourth causes of action be dismissed. In addition to those deficiencies, plaintiff's complaint fails to establish the requisite personal involvement of Coxsackie Superintendent Israel Rivera in the constitutional deprivations alleged. Consequently, that defendant is therefore entitled to dismissal of

28

all claims against him.

Having found, however, that plaintiff has pleaded a colorable claim that through their actions defendants Costonas, Wildermuth and J. Frazier, denied him Equal Protection and engaged in unlawful retaliation against him, I recommend that their motion to dismiss those claims be denied.  Accordingly, it is hereby

RECOMMENDED that defendants' motion to dismiss plaintiff's complaint (Dkt. No. 25) be GRANTED, in part, and that all claims against defendant Israel, as well as plaintiff's third and fourth causes of action against all defendants, be DISMISSED, but that defendants' motion otherwise be DENIED and that he be permitted to pursue his Equal Protection and unlawful retaliation claims as against defendants Costonas, Wildermuth and Frazier.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.


Dated:      December 27, 2007
            Syracuse, NY



David E. Peebles
U.S. Magistrate Judge